IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------- :
INLAND WATERS POLLUTION : CASE NO. 1:06 CV 02697
CONTROLS, INC., :
: MEMORANDUM OF OPINION AND
Plaintiff, : ORDER
:
-vs- :
:
:
MARRA/MAJESTIC JOINT VENTURE, :
et al., :
:
Defendants. :
------------------------------------------------------- :
:
:

UNITED STATES DISTRICT JUDGE LESLEY WELLS

     Several disputes have arisen between the parties to a sewer rehabilitation and cleaning project in Cleveland, Ohio. Plaintiff Inland Waters Pollution Control, Inc. ("Inland') initiated suit alleging, variously, breach of contract, unjust enrichment, promissory estoppel, and action on bond against defendants Marra/Majestic joint Venture, Marra Corporation, and several named individuals. (collectively, "Marra"). (Doc. 1). Contracting to clean a specific portion of sewer line, Inland operated as

Marra's subcontractor in Marra's general contract with the Northeast Ohio Regional Sewer District.

In its Memorandum of Opinion and Order of 6 July 2007, the Court dismissed several of Inland's allegations in response to Marra's motion to dismiss. (Doc. 27, 28). In its Answer to Inland's newly trimmed allegations, Marra included a Third-Party Complaint against the Northeast Ohio Regional Sewer District (NEORSD, or "the Sewer District") (Doc. 30, UNDER SEAL). Only Counts II and III of Marra's Answer address NEORSD, alleging breach of contract (Count II) and indemnification and contribution (Count III).

Responding to Marra's claims, the Sewer District brought a motion for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c). (Doc. 41). Marra filed an opposition (Doc. 43, UNDER SEAL), and the Sewer District replied. (Doc. 46).

On 31 March 2008, this matter was referred to Magistrate Judge Kenneth S. McHargh for a Report and Recommendation ("R&R"), pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 72.1. (Doc. 47). The resulting R&R recommended granting the Sewer District's motion for judgment on the pleadings with regard to Marra's breach of contract claim, but denied as a prudential matter, the Sewer District's motion for judgment on the pleadings as applied to the tort allegations of indemnification and contribution.

The parties timely filed their responses to the Magistrate Judge's R&R. Marra objected to Magistrate Judge McHargh's recommendation to grant judgment on the pleadings with regard to the breach of contract claim (Doc. 49), and the Sewer District responded to Marra's objection. (Doc. 51). The Sewer District objected to the

2

recommendation to deny judgment on the pleadings with regard to the allegations of indemnification and contribution (Doc. 50), to which Marra responded (Doc. 52), and the Sewer District replied (Doc. 53).

For the reasons set forth below the Court will grant the Sewer District's Rule 12(c) motion as to both Marra's breach of contract claim and indemnification claim. As such, the Court will adopt the Magistrate Judge's recommendations in Sections I-IV of the R&R. The Court will address each of the parties' positions in turn.

### I. Standard of Review for a Report and Recommendation

The applicable district court standard of review for a magistrate judge's report and recommendation depends upon whether objections were made to the report. When objections are made to a report and recommendation of a magistrate judge, the district court reviews the case de novo. Fed. R. Civ. P. 72(b) provides:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

The Court will review de novo those portions of Magistrate Judge McHargh's Report and Recommendation to which objections have been made.

### II. Absence of 'Catastrophic' Conditions

In its first objection to the Magistrate Judge's R&R, Marra maintains the Report erred in determining as a matter of law that the "incorrect manhole diameter specifications provided by the NEORSD" did not amount to a "'catastrophic' differing site

condition," as set out in the language of the parties' agreed Change Order No. 7.  (Doc. 49, at 9).  In pertinent part, Change Order No. 7 ("Change Order") states:

> [Marra] will take responsibility for the entire job and shall waive all claims related to the performance of work under this Contract, including, but not limited to, Differing Site Conditions unless something catastrophic is encountered (e.g. collapsed tunnel or hazardous waste).  This waiver of claims includes, but is not [sic] be limited to, jet grouting, tunnel connections, geotechnical or geological conditions, sediment quantities or type, flow velocities or quantities and work hours.

The R&R reviewed Marra's Third-Party Complaint against the Sewer District, which alleges:

> Each manhole was to be utilized as access to clean the EI Tunnel.  The diameters of the manholes are extremely critical for the cleaning operations for items including, but not limited to the equipment installation, maintenance and removal, capability to effectively remove sediment, man entry, bypass pumping and ventilation needs.

(Doc. 48, at 13; Doc. 30, UNDER SEAL, ¶ 11).  As a result, Marra maintains it could not accomplish the cleaning with the methods and within the time anticipated by Change Order No. 7 and calculated the resulting damages to be $3,761,194.99 for "increased subcontractor expense, equipment, labor and certain overhead expenses. "  Id. at ¶¶12, 50.

      The R&R concluded the term 'catastrophic' could not be applied to the alleged erroneous measurement of the manhole diameter as a matter of law.  Noting that the Change Order itself did not provide a definition of the term 'catastrophic,' the R&R relied upon dictionary definitions of the root term, and upon application of the term in prior court decisions.  See Anderson v. United States Dept. of Labor, 422 F.3d 1155, 1160 (10th Cir. 2005) (finding a catastrophic risk zone applicable to an area where "the chance of somebody being injured or killed was high); Tate v. Boeing Helicopters, 140

F.3d 654, 660 (6th Cir. 1998) (finding a catastrophic malfunction to occur where it "cause[d] death or severe injury of personnel or system loss."). The Magistrate Judge found that a 'catastrophic' condition had to bear the earmarks of something sudden and perilous.

In its objections, Marra contends the term 'catastrophic' is ambiguous and should have been left to the "fact finder to use extrinsic evidence to determine the intent of the parties." (Doc. 49, at 10).  After parsing several dictionary definitions of the noun 'catastrophe' and the adjective 'catastrophic', Marra concludes the term is ambiguous because, "rather than being limited to an unanticipated sudden calamity" as rendered in the R&R, the dictionary definitions of 'catastrophic' "include and recognize that something could cause financial hardship or ruin." (Doc. 49, at 13).

Upon a de novo review of the record, the Court adopts the Magistrate Judge's position that the term 'catastrophic' is inapplicable, as a matter of law, to the erroneous manhole dimensions.  First, the R&R recognized the term 'catastrophic' within the meaning of the Change Order itself, which provides the examples of a collapsed tunnel or hazardous waste as 'catastrophic' conditions.  These examples are also consonant with the Magistrate Judge's finding that the parties negotiated in the Change Order to exclude, from the waiver, conditions which are sudden and perilous and the field condition of the manholes do not fall within the ambit of the parties representation of a 'catastrophic' condition.  As the R&R recognizes, Marra had a duty to verify the conditions of the site prior to entering into the waiver in the Change Order. (Doc. 48, at 16). Second, Marra's determination to expand the meaning of 'catastrophic' to encompass anything that would "cause financial hardship or ruin" simply eviscerates the

5

language of the Change Order which specifically separates "catastrophic" conditions from "Differing Site Conditions."  The parties negotiated for that distinction, waiving all work related claims in the latter, but not the former.  The meaning of the term 'catastrophic,' its use in the Change Order, the examples provides in the Change Order, and the jurisprudence of the term as defined in past court decisions, all coalesce to compel the Court to determine, as a matter of law, that the alleged erroneous manhole dimensions did not present a 'catastrophic' condition within the terms of the parties' Change Order.

### III.  The Change Order is not Invalidated by O.R.C. § 4113.62

In its breach of contract claim, Marra contends that O.R.C. § 4113.62 renders the waiver provision in the Change Order invalid.  In pertinent part, the Change Order states:

> [Marra] will take responsibility for the entire job **and shall waive all claims related to the performance of work under this Contract**, **including, but not limited to, Differing Site Conditions unless something catastrophic is encountered** (e.g. collapsed tunnel or hazardous waste).  This waiver of claims includes, but is not [sic] be limited to, jet grouting, tunnel connections, geotechnical or geological conditions, sediment quantities or type, flow velocities or quantities and work hours.

(Emphasis added).  Marra maintains that any contract clause waiving potential claims for delay is void as against public policy, pursuant to § 4113.62, which states in pertinent part:

> Any provision of a construction contract, agreement, or understanding, or specification or other documentation that is made a part of a construction contract, agreement, or understanding, that waives or precludes liability for delay during the course of a construction contract when the cause of

6

> the delay is a proximate result of the owner's act or failure to act, or that waives any other remedy for a construction contract when the cause of the delay is a proximate result of the owner's act or failure to act, is void and unenforceable as against public policy.

O.R.C. § 4113.62(C)(1).

In reviewing the main Contract, the Change Order, and § 4113.62, the Magistrate Judge found the parties' negotiated Change Order passed muster.  The R&R recognized the "no-damages-for-delay-clause" in § 4113.62(C)(1) as inapplicable, in this instance, where the parties negotiated for compensation resulting from delay, and where the parties negotiated for exceptions involving 'catastrophic' conditions.  (Doc. 48, at 17-19). Quoting Dugan & Meyers Construction Co., Inc. v. Ohio Department of Administrative Services, 112 Ohio St. 3d 226, 231-32 (2007).  Instead, the R&R found Marra and the Sewer District had negotiated for delay damages up to $4,400,000.00, "an amount which would compensate Marra for past delays, as well as any future claims for delay." (Doc. 48, at 18; Doc 30, UNDER SEAL, DX B; Doc. 37, DX G).[1]

---

[1] As the R&R correctly observed, the Change Order was a negotiated addendum to the main Contract, allowing Marra to receive compensation up to $4,400,000.00 for:

> full compensation for the extra work in the Terms and Conditions contained herein . . . all claims for additional compensation, costs, **damages related to past** impacts, **delays,** loss of productivity disruption and fees arising from circumstances related to this Contract to date **and for all future claims which may arise** in connection with the performance of work under this Contract, as noted in paragraph 6.

(emphasis supplied).  Paragraph 6 is the clause in dispute in the Change Order allowing for a waiver due to 'catastrophic' conditions.  As such, the Change Order explicitly exempts the preclusion of remedies for 'catastrophic' site conditions.  Put differently, the Contract recognizes future delay claims should they be recognized as the result of 'catastrophic' site conditions.

In this context, Marra challenges the Magistrate Judge's application of the decision in B.I. Chipping Co. v. R.F. Scurlock Co., 2005 WL 34834306 at *5 (Ohio Ct. App. Dec. 20, 2005).  The R&R recognized B.I Chipping as standing for the proposition that parties could negotiate limitations on the delay-related damages that could be recovered.  (Doc. 48, at 19).  The Court agrees.  In B.I. Chipping the parties agreed to a limitation on compensation for delay claims, the very same principle operable in this instance.  The form of the Contract in which Marra negotiated to receive $4,400,000.00 as compensation for any future claims that might arise cannot, by any stretch, be fit into the letter or meaning of "no-damages-for-delay-clauses" prohibited by § 4113.62(C)(1).

The Court will adopt the findings and determinations of the Magistrate Judge's R&R and grant the Sewer District's motion for judgment on the pleadings as directed at Marra's breach of contract claim.

## IV.  Marra's Indemnification Claim is Waived

Marra's Third-Party Complaint alleges Breach of Contract (Count II) and seeks Indemnification and Contribution against the Sewer District (Count III) should Marra be found liable against plaintiff Inland Waters for any alleged failure to inspect the EI Tunnel in a timely manner.  (Doc. 30, UNDER SEAL, p. 32, 33).  The viability of both of these claims are predicated upon the legal interpretation of the negotiated terms in Change Order No. 7:

> [Marra] will take responsibility for the entire job and shall waive all claims related to the performance of work under this Contract, including, but not limited to, Differing Site Conditions unless something catastrophic is encountered (e.g. collapsed tunnel or hazardous waste).  This waiver of claims includes, but is not [sic] be limited to, jet grouting, tunnel

Case: 1:06-cv-02697-LW  Doc #: 54  Filed: 03/13/09  9 of 12.  PageID #: 482

connections, geotechnical or geological conditions, sediment quantities or type, flow velocities or quantities and work hours.

Because the Sewer District's motion for judgment on the pleadings "did not move for judgment on the indemnification claim" and only explicitly discussed the claim in its reply brief, the R&R, in an abundance of caution, recommended denying judgment on the pleadings with regard to indemnification. (Doc. 48 at 20). In noting that "raising the matter in a reply brief is insufficient," the R&R relied upon the decisions in Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 553 (6th Cir. 2008) (non-movant not afforded response to new argument in reply brief), Rush v. Illinois Cent. R. Co., 399 F.3d 705, 729 n. 19 (6th Cir. 2005) (new argument presented in the reply brief), and Bishop v Oakstone Academy, 477 F.Supp 2d 876, 889 (S.D. Ohio 2007) (new issues raised for the first time in reply brief). These decisions have noted that issues raised for the first time in replies to responses are waived because:

> Raising the issue for the first time in a reply brief does not suffice; reply briefs reply to arguments made in the response brief – they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration. Further the non-moving party ordinarily has no right to respond to the reply brief, at least until oral argument. As a matter of litigation fairness and procedure, then, we must treat [such issues] as waived.

Novosteel SA v. U.S. Bethlehem Steel Corp, 284 F.3d 1261, 1274 (Fed. Cir. 2002) quoted in Scottsdale Ins. Co., supra, 513 F.3d at 553.

Upon review of the record and the extant jurisprudence, the Court will consider the Sewer District's motion for judgment on the indemnification claim. First, the record indicates the indemnification claim is inseparable from the breach of contract claim. As such, the Sewer District does not run afoul of the concern in Novosteel and Scottsdale

that it has been improvidently provided with "a new opportunity to present yet another issue for the Court's consideration."  Second, the record indicates that both parties addressed the indemnification issue before this Court in response to the Magistrate Judge's R&R.  As such, consideration of the indemnification claim in this context, even if viewed as a separate claim, avoids the concern in Novosteel and Scottsdale that "the non-moving party ordinarily has no right to respond to the reply brief."  Finally, Courts in this Circuit recognize the reply waiver rule as one of prudence and not as a jurisdictional bar.  See Coffee Beanery, Ltd. v. WW, LLC, 2008 WL 4899478 (6th Cir. 14 November 2008); Am. Meat Institute v. Pridgeon, 724 F.2d 45, 47 (6th Cir. 1984).  As such, this Court may exercise its discretion on this issue when the question is one of law, "the proper resolution of the issue is clear beyond doubt," or the "failure to take up the issue will result in a miscarriage of justice.  Scottsdale Ins. Co., supra, 513 F.3d at 552-53 (citing Friendly Farms v. Reliance Ins. Co., 79 F.3d 541, 545 (6th Cir. 1996).

Marra seeks indemnification for any liability they may incur due to the Sewer District's alleged untimely inspection of Inland Waters' cleaning work on the EI Tunnel.  The Sewer District's duty to timely inspect Inland Waters' cleaning efforts was a duty resting upon the contract negotiated between Marra and the Sewer District and not upon an obligation in tort.  See  Floor Craft Floor Covering, Inc. v. Parma Community Gen. Hosp. Assn., 54 Ohio St.3d 1, 7 (1990) (recognizing that tort law offers redress for losses suffered by reason of a breach of some duty imposed by law to protect the broad interests of social policy while, in contrast, contract law is designed to compensate a party for breach of duties assumed only by agreement).   As the Magistrate Judge properly recognized, in the Change Order Marra negotiated a waiver of past and future

claims for delay against the Sewer District for the sum of $4,400,000.00.  (Doc. 48, at 18).  As both this Court and the R&R have also recognized, the Change Order waived "all claims related to performance of work under this Contract," which included delays, without running afoul of O.R.C. § 4113.62(C)(1).  The Court also finds that the alleged inspection delays do not trigger the 'catastrophic' conditions exception negotiated for in the Change Order.

Marra's indemnification claim is not only predicated upon the alleged breach of contract by the Sewer District, but subsumed within the Change Order as a "claim[ ] related to the performance of work under [the] Contract."  As Marra's subcontractor, any costs incurred by Inland Waters, the very basis of Marra's indemnification claim, were "related to the performance of work" under the Contract negotiated between Marra and the Sewer District.  The Sewer District's duty to perform timely inspections of the work done in the EI Tunnel was a duty premised entirely upon the terms of the Contract.  As such, Marra's tort claim of indemnification rests upon the contract.  Corporex Dev. & Constr. Mgt., Inc. v. Schook, Inc. 106 Ohio St.3d 412 (2005) (finding that "the economic-loss rule generally prevents recovery in tort of damages for purely economic loss").  Because the Court has found that Marra negotiated a waiver of all claims related to performance of work under the Contract, the indemnification claim is dismissed as a matter of law pursuant to Rule 12(c).

11

**V. Conclusion**

For the reasons set forth in this Order, the Court adopts sections I-IV of Magistrate Judge McHargh's Report and Recommendation and grants Third Party Defendant Northeast Ohio Regional Sewer District's motion for judgment on Marra/Majestic Joint Venture's breach of contract and indemnification claims.

.

IT IS SO ORDERED.

                 /s/Lesley Wells
                 UNITED STATES DISTRICT JUDGE